[Cite as *State ex rel. Bonnlander v. Hamon*, 2015-Ohio-4038.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Timothy Bonnlander, | : | |
| Relator, | : | |
| v. | : | No. 14AP-855 |
| Robert and Marvin Hamon and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

# D E C I S I O N

## Rendered on September 30, 2015

*Lisa M. Clark,* for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Timothy Bonnlander, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order awarding him the compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny the requested writ of mandamus. Specifically, the magistrate determined that the

commission could rely on the reports of Debjani Sinha, Ph.D., and that those reports did provide the commission with some evidence supporting its determination that relator is capable of sustained remunerative employment. Therefore, the magistrate concluded that the commission did not abuse its discretion in determining that relator is not permanently and totally disabled.

{¶ 3} Relator filed an objection to the magistrate's decision, which we have paraphrased and grouped as follows:[1]

> 1. The magistrate erred in determining that Dr. Sinha's report supports a finding that relator is capable of four hours of sustained remunerative employment in the context of PTD compensation under *State ex rel Sheller-Chiles v. Indus. Comm.,* 10th Dist. No. 13AP-245, 2014-Ohio-313.
>
> 2. The magistrate erred in finding that the commission accepted the restrictions of multiple, generous breaks and in failing to fully consider the impact of generous, multiple breaks on relator's ability to engage in sustained remunerative employment.
>
> 3. The magistrate erred in determining Dr. Sinha's report supports the employment determination, as it is internally inconsistent and therefore equivocal.
>
> 4. The magistrate erred in making its own finding that relator is capable of more than four hours of work, in contrast to the commission's findings.

{¶ 4} Relator's first and second objections contain, in essence, the same arguments made to and addressed by the magistrate, i.e., that Dr. Sinha's report did not support a finding that relator is capable of four hours of sustained remunerative employment to meet the threshold set in *State ex rel. Sheller-Chiles v. Indus. Comm.,* 10th Dist. No. 13AP-245, 2014-Ohio-313, due to Dr. Sinha's statement that "[relator] can at a minimum work part-time, up to 4 hours a day, with generous breaks built in," and that the commission failed to accept or properly apply Dr. Sinha's restriction of multiple, generous breaks. (Sinha Report, 11.) For the reasons set forth in the magistrate's

---

[1] Relator does not delineate objections. In the interest of justice, we gleaned these objections from the "Objection and Memorandum in Support" section of relator's submission to this court. (Objection of Relator Timothy Bonnlander to Magistrate's June 22, 2015 Order, 3.)

decision, however, we overrule relator's objections. *State ex rel. Schottenstein Stores Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-1066, 2009-Ohio-2142, ¶ 4.

{¶ 5} Relator's third objection contends that the magistrate failed to address his argument about the internal inconsistency of Dr. Sinha's report even though relator raised this argument in his brief. "Equivocal or internally inconsistent medical reports do not constitute some evidence upon which the commission can rely." *State ex rel. Smith v. Thomas/Sysco Food Serv.*, 10th Dist. No. 13AP-37, 2014-Ohio-1641, ¶ 10.

{¶ 6} Relator points to Dr. Sinha's statement that "[v]ariable alertness was noted during the interview, but these extended for short periods of time, and this will limit his ability to engage in any sustained, competitive work" as internally inconsistent with her aforementioned statement that "[relator] can at a minimum work part-time, up to 4 hours a day, with generous breaks built in." (Sinha Report, 10, 11.) In finding that Dr. Sinha's reports constituted "some evidence" supporting the commission's determination, the magistrate implicitly rejected relator's argument. (Magistrate's Decision, ¶ 45.) Our independent reading of the report shows that Dr. Sinha's first statement, regarding relator's viable alertness, informs Dr. Sinha's ultimate conclusions about relator's restrictions and length of work capability stated in the second statement. Therefore, Dr. Sinha's report is not internally inconsistent or equivocal and, as such, relator's third objection is overruled.

{¶ 7} Regarding relator's fourth objection, the magistrate did not impermissibly supplement the commission's order with a conflicting finding of fact. Rather, the magistrate reviewed the facts and determined that the commission's factual findings were consistent with the evidence presented. What relator submits is an impermissible addition of content to the commission's order, we find to be part of the magistrate's explanation of why the commission's determination that relator was capable of sustained remunerative employment was supported by some evidence. As such, relator's fourth objection is overruled.

{¶ 8} Following review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we overrule relator's objections to the magistrate's decision and adopt the magistrate's decision as our own,

including the findings of fact and conclusions of law therein. The requested writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

BROWN, P.J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 9} I respectfully dissent from the decision of the majority. I would sustain relator's second objection and grant the writ of mandamus because the magistrate's characterization of Dr. Sinha's, the examining doctor, opinion as to the amount of work per day that relator can do, has been misinterpreted as a matter of law in the magistrate's decision. Dr. Sinha stated in her report that "[relator] can at a minimum work part-time, up to 4 hours a day, with generous breaks built in." (Appended Magistrate's Decision, at ¶ 20.) The magistrate stated in his decision that:

> Dr. Sinha found that relator can "at a minimum" work "up to" a four-hour day. Use of the term "at a minimum" infers that relator can work more than "up to" the four-hour day that Dr. Sinha opines he can do.

(Appended Magistrate's Decision, at ¶ 49.) "Sustained remunerative employment" as set forth in *State ex rel. Sheller-Chiles v. Indus. Comm.*, 10th Dist. No. 13AP-245, 2014-Ohio-313, ¶ 5, means a work capacity of "four or more hours per day." I would find as a matter of law that "up to 4 hours a day, with generous breaks built in" is not "sustained remunerative employment" under the *Sheller-Chiles* standard.

{¶ 10} Looking to our decision in *Sheller-Chiles*, relator's situation is similar to the claimant's in that case. In *Sheller-Chiles*, we held that being found to be " 'capable of limited and part-time employment activities' [that] 'would require breaks from the work activity on a frequent basis,' " not to be capable of sustained remunerative employment, holding that sustained remunerative employment meant four or more hours of work. In doing so, we said:

> Dr. Chiarella indicated only that claimant was "capable of work with various limitations and modifications[,]" "capable of limited and part-time employment activities[,]" and "would

require breaks from the work activity on a frequent basis." These descriptions are not necessarily equivalent to claimant being capable of "sustained" remunerative employment. Dr. Chiarella's report did not provide any detailed figures or descriptions from which the commission or this court could extrapolate how many hours claimant could work. *Thus, there is nothing in Dr. Chiarella's statements provided in his report that gives the court any confidence that he was concluding claimant could work four or more hours per day*, which prior case law from this court establishes is the standard for determining whether part-time work capacity constitutes "sustained" remunerative employment. *See, e.g., State ex rel. Franklin Cty. Bd. of Commrs. v. Indus. Comm.*, 10th Dist. No. 09AP-379, 2010-Ohio-2728, ¶ 62; *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*, 10th Dist. No. 06AP-387, 2007-Ohio-1498, ¶ 38, *State ex rel. Moyer v. Sharonville Fire Dept.*, 10th Dist. No. 04AP-92, 2005-Ohio-587, ¶ 12; *State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 19; *State ex rel. DeSalvo v. May Co.*, 10th Dist. No. 98AP-986 (June 29, 1999) (memorandum decision); [*State ex rel.*] *Cale* [*v. Indus. Comm.*, 10th Dist. No. 01AP-1143, 2002-Ohio-2924]. Furthermore, we note that the Supreme Court of Ohio affirmed this court's decision in *DeSalvo* regarding the four-hour threshold in *State ex rel. DeSalvo v. May Co.*, 88 Ohio St.3d 231 (2000). *See DaimlerChrysler Corp.* at ¶ 31 (pointing out that the Supreme Court affirmed this court's decision in *DeSalvo*). *For these reasons, we find Dr. Chiarella's report could not constitute some evidence to support the commission's determination that claimant could participate in part-time sustained remunerative employment, and we overrule the commission's objection.*

(Emphasis added.)  *Id.* at ¶ 5.  Based on what we have stated in *Sheller-Chiles*, I would find that Dr. Sinha's report that, relator "can at a minimum work part-time, up to 4 hours a day, with generous breaks built in," does not constitute some evidence to support a determination that relator could participate in part-time sustained remunerative employment.

{¶ 11} To illustrate, when an individual is said to work from 8:00 a.m. to 5:00 p.m., that work time, nine hours, includes a meal break and is considered to be and is paid as an eight-hour day.

> Where there are no overtime premium payments the rule for determining the regular rate of pay is to divide the wages actually paid by the *hours actually worked* in any workweek and adjudge additional payment to each individual on that basis for time in excess of forty hours worked for a single employer.

(Emphasis added.) *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459-60 (1948). Under the federal Fair Labor Standards Act, employers covered by the statute are required to pay their employees specified minimum hourly wages and time-and-one-half pay for work in excess of 40 hours a week. 29 U.S.C. 206, 207(a)(1). While the Fair Labor Standards Act does not define "work," it does permit a deduction in pay for bona fide meals. *See, e.g.*, 19 C.F.R. 785.19(a).

{¶ 12} As for other types of breaks, places of employment customarily provide for short work breaks. In fact, the Fair Labor Standards Act addresses the short rest or "breaks" concept.

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. *Mitchell v. Greinetz*, 235 F.2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F.Supp. 996 (S.D.Cal.1945).

29 C.F.R. 785.18. *Lillehagen v. Alorica, Inc.*, C.D.Cal. No. SACV 13-0092-DOC(JPRx) (Dec. 10, 2014).

{¶ 13} Dr. Sinha's opinion that relator requires "generous" work breaks is not the same as "[r]est periods of short duration" under the Fair Labor Standards Act. A four-hour day with "generous breaks built" in is not four hours of work. We can assume that no employer will be willing to pay for "generous breaks," nor can we find that the Fair Labor Standards Act would require it. We are left with no resolution for the purposes of examining the commission's decision, of whether relator can be at a work place for four hours or actually work for four hours, which, with generous breaks, could be five or six hours. Dr. Sinha's statement of "at a minimum" applied to part-time work, and her

definition of part-time work was "up to 4 hours."  This falls short of what we have defined in *Sheller-Chiles*, as supporting a finding of capability for sustained remunerative employment.  As such, it fails to constitute some evidence on which to support the commission's determination.

{¶ 14} I would sustain relator's second objection based on Dr. Sinha's recommendation not meeting the *Sheller-Chiles* standard of sustained remunerative employment, and grant the requested writ.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Timothy Bonnlander,   :

   Relator,   :

v.   :   No.  14AP-855

Robert and Marvin Hamon   :   (REGULAR CALENDAR)
and Industrial Commission of Ohio,
              :
   Respondents.
              :

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on June 22, 2015**

---

*Lisa M. Clark,* for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 15} In this original action, relator, Timothy Bonnlander, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 16} 1. On October 13, 1992, relator sustained severe injuries while employed as a laborer with respondent Robert and Marvin Hamon, DBA Hamon Home Improvements.  On the date of injury, relator was involved in a motor vehicle collision while driving his employer's van.

{¶ 17}  2.  The industrial claim (No. L7512-27) is allowed for:

> Closed head injury; fracture right shoulder; cervical fracture C-6; right pulmonary contusion; T12-L1 compression fracture; bursitis right shoulder; torn glenoid labrum; right shoulder impingement syndrome; right shoulder acromioclavicular joint arthrosis; lumbosacral spondylosis; thoracic spondylosis; lumbar degenerative disc disease L4-L5, L3-L4, L3-L4, L5-S1; thoracic degenerative disc disease T-11-T12; depressive disorder.

{¶ 18}  3.  On November 22, 2013, psychologist William C. Melchior, Ed.D, wrote:

> Mr. [Bonnlander] was initially seen at our office on 3-4-09 for a psychological evaluation and was diagnosed to suffer with Depressive Disorder-NOS (311) which developed as a direct and proximate result of his 10-13-92 work-related injury. Mr. [Bonnlander's] claim was amended to include this psychological condition on 5-24-09. He has been participating in individual outpatient psychotherapy. Treatment has been directed to facilitate management of his depression, chronic pain, and stress.
>
> * * *
>
> Despite continued efforts through therapy, Mr. [Bonnlander's] psychological condition has reached a stable plateau where no further fundamental change can be expected. The claimant's psychological condition was determined to have reached [maximum medical improvement] in November of 2013. His ongoing psychological symptoms include: decreased stress tolerance, decreased concentration, impaired sleep, fatigue, decreased self-worth, decreased social activities, sensitivity to the opinion of others, distrust of others, irritability, and chronic pain. These symptoms result in: difficulty maintaining attention for extended periods of time, reduced ability to concentrate, an inability to accept criticism appropriately, and inability to complete a normal work-day and work week without an unreasonable number and length of rest periods, inability to deal with stress for semi-skilled and skilled work, and respond appropriately to changes in a routine work setting.
>
> * * *

Mr. [Bonnlander], a 45 year old male, was injured on the job on 10-13-92, while employed as a carpenter for Hanover [sic] Home Improvements. Results of his injury included numerous physical problems related to his neck, back and shoulder. His work ethic was exhibited by his work history. However, Mr. [Bonnlander] is no longer able to pursue physically demanding jobs. His chronic pain, medical regimen, and psychological condition contribute to his inability to maintain focus or concentration for an extended period of time. Mr. [Bonnlander's] ability to cope with his pain is limited to relatively short segments of time. He would not be able to perform a normal work day without an unusual number and length of rest periods. Therefore, this psychologist agrees that Mr. Bonnlander is permanently and totally disabled [from] work.

{¶ 19} 4. On February 28, 2014, relator filed an application for PTD compensation. In support, relator submitted the November 22, 2013 report of Dr. Melchior.

{¶ 20} 5. On May 13, 2014, at the commission's request, relator was examined by psychologist Debjani Sinha, Ph.D. In her 11-page narrative report, Dr. Sinha states:

**_Mental Status Examination (MSE):_**

* * *

_Review of Four Functional Areas:_

**ADL/Typical Days:** Mr. Bonnlander participates in the care of his children. He wakes up before the children, and takes his daughter to the bus-stop at 6:30 am. He watches television till his son wakes up and helps him get ready for school. He then takes him, to the bus-stop at 7:40 am. He watches television till 10 am, and then cares for the animals (chickens and the family dog). In this past month he has started raising chickens. He will cut grass and do weeding as necessary, but noted that the weeding is difficult for him as it contributes to pain. He leaves all the household tasks to his wife. The children return home from school between 3 - 3:30 pm, and he works closely with his son helping him with homework. Mr. Bonnlander commented that he feels his children have given him a sense of purpose, or else he would have been "mad." In the evenings he may watch his son's baseball game. On other days he helps coach his daughter's

softball team, in an effort to be involved in their lives. He drives independently. He is not required to take care of any household chores, but noted that he does everything else outside of the house. He can fix simple meals if necessary, such as sandwiches and will occasionally go to the grocery store. His wife manages the family's finances and pays the bills. He is particularly worried about the family's finances as he supports his family on SSDI and by using in [sic] credit cards; he reports that he has over 10K in credit card debt. He will occasionally exercise, doing stretches to ease his pain. He does not go to malls or do other forms of retail shopping. He will attend activities related to his children's sports and school. He attends church every Sunday. **Class 2** - **Mild Impairment.**

**Social Functioning:** Mr. Bonnlander reports minimal contact outside of his family. He gets along with his wife and three children. He spends a lot of time with his brother, Kenny and they go places together. He generally gets along with his extended family, and reports that overall interactions with others are generally "ok." He acknowledges irritability, and reports that he has snapped at people, including his family and his brother, even when he works hard not to. He has been in a couple of situations where he has been drawn into a yelling exchange with one of the other parents while their children was playing a game. He tries not to engage much with others, and usually limits himself to coaching the team, mostly in an effort to be involved with his children. He occasionally will feel that others do not like him, but he reports that he tries "not to let it bother" him. Overall, he reports that when he is around people he tries "to be quiet." **Class 3** - **Moderate Impairment.**

**Concentration, Persistence, and Pace:** Mr. Bonnlander's ability to concentrate is variable, in part influenced by the medication he takes, his pain, and his mood. His memory appears to be problematic and can interfere with functioning in multiple domains. Yet he functions relatively well in attending to self-assigned tasks, many of which require persistence. He is able to do so as he follows a pre-defined schedule such as the children's school hours, the support of his brother, and the absence of any demands to meet continuous deadlines. He does well with routine. **Class 3** - **Moderate Impairment.**

Adaptation: Mr. Bonnlander has adapted to the changes in his functioning since the accident. He has improved considerably from the cognitive weaknesses observed right after his accident. Mood issues were not reported initially, but emerged later. His mood remains depressed but stable, and he has made a concerted effort to prevent it from overwhelming him. He successfully returned to employment after his accident, and only stopped working because of pain symptoms. He actively participates in his children's care and takes care of responsibilities around his home. He is active in coaching his children's sports teams, and attends all their activities as an involved parent. He has demonstrated initiative and motivation; for example, he has recently initiated raising chickens and has actively signed up to assume responsibilities for coaching his children's sports teams. He has developed a coping style of suppressing his thoughts and feelings around the losses associated with the accident and the corresponding stressors; he is particular not to permit much weight to the depressed mood and thoughts, keeping much of these feelings to himself. The emotional distress associated with the accident and the changes it has resulted in his life are masked but continue to surface in how he thinks about his life circumstances, his physical and emotional reactions, and his cognitions. **Class 2** - **Mild Impairment.**

* * *


*Discussion/Opinion:*

* * *

Based on his allowed psychological/psychiatric conditions and its impact in the four functional areas, the whole person impairment is 23%.

* * *

Based solely on the allowed psychiatric/psychological condition, Mr. Bonnlander is capable for work. As a condition, depressive disorder does not preclude an individual from working. It is the level of impairment that will determine the nature of work and the limitations resulting from the allowed psychiatric/psychological condition. Mr. Bonnlander's memory and attentional abilities will be the most significant limitation in work-

related activities. Beyond the cognitive deficits that likely stemmed from the closed head injury, depressive disorder can impact information processing, notably memory and attention-concentration. Variable alertness was noted during the interview, but these extended for short periods of time, and this will limit his ability to engage in any sustained, competitive work. His emotional state can also adversely impact social interactions and it appears that his tolerance levels for either high stimulation or external stressors (such as team members' parents yelling) are somewhat compromised. He has the benefit of participating in many activities without having to meet deadlines, work at a sustained pace, or have increased contact with others. Routines appear to be helpful to Mr. Bonnlander. Job tasks that require constant new learning and marked attention to details are not recommended based on on-going memory problems. Fluency of ideas may be impacted as well. Any work environment that is considered for him will likely need to include flexibility for these areas. He can at a minimum work part-time, up to 4 hours a day, with generous breaks built in.

{¶ 21} 6. On May 13, 2014, Dr. Sinha completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination."  The form is provided by the commission.

{¶ 22} 7. On the form, Dr. Sinha indicated by her mark her agreement with the preprinted statement:  "This Injured Worker is capable of work with the limitation(s) / modification(s) noted below."

{¶ 23} In the space provided, Dr. Sinha wrote in her own hand:

Part-time work
- accommodate for variable concentration
-routine jobs are more appropriate
-minimal new learnings on an ongoing basis
-multiple breaks

{¶ 24} 8. On or about May 12, 2014, at the commission's request, relator was examined by John J. Brannan, M.D.  In his five-page narrative report, Dr. Brannan opines that relator has a 31 percent whole person impairment for the allowed physical conditions of the industrial claim.

{¶ 25} In his narrative report, Dr. Brannan further opines:

> In regards to the functional capacity, based on the fact that his conditions are stable, and that he displays no distinct neurologic or unstable findings as a result of these disorders, I recommend sedentary work related duties, where avoidance of excessive overhead use of the right arm and excessive lifting, bending, and twisting would be indicated.

{¶ 26} 9. On May 12, 2014, Dr. Brannan completed a "Physical Strength Rating" form. On the form, Dr. Brannan indicated by his marks that relator is capable of "sedentary work."

{¶ 27} 10. At the request of relator's counsel, vocational expert Janet Chapman, reviewed information and reports contained in the claim file. In her four-page narrative report, Chapman concludes:

> In summary, Mr. Bonnlander presents a very limited vocational profile. He demonstrates a strong work ethic as evidenced by his return to work for an extended time following the injury and his participation in vocational rehabilitation services. Unfortunately, the combination of physical limitations to a diminished range of sedentary, unskilled work at best combined with cognitive issues and lack of transferable skills (or inability to use them) suggest that Mr. Bonnlander would be unable to return to work in the competitive labor market.

{¶ 28} 11. Following a September 11, 2014 hearing, an SHO issued an order denying the PTD application. The SHO's order explains:

> The Injured Worker sustained an injury on 10/13/1992 when he was riding in a work van leaving a job and was involved in a motor vehicle accident. As a result of this injury, the Injured Worker sustained a closed head injury, injury to his right shoulder, injuries to his cervical, thoracic and lumbar spine, a right pulmonary contusion [as] well as a depressive disorder. The Injured Worker underwent right shoulder surgery on 07/14/1998. The Injured Worker currently sees a pain management specialist for treatment of [his] orthopedic conditions. The Injured Worker currently also see[s] a psychiatrist on a monthly basis as well as a psychotherapist.
>
> The Injured Worker was examined at the request of the Industrial Commission by Dr. Brannan on 05/12/2014

[with] regard to the allowed orthopedic conditions in the claim. Dr. Brannan noted that the Injured Worker has undergone extensive treatment over the years due to his orthopedic condition including medical and chiropractic care. Dr. Brannan did a physical examination of the Injured Worker and also reviewed various medical records contained in the file. He concluded that the Injured Worker's orthopedic condition had reached maximum medical improvement as a review of documentation in file has demonstrated no change in the Injured Worker's condition or in medical planning. He concluded that he Injured Worker has a 31% whole person impairment rating.

Dr. Brannan indicated that the Injured Worker's medical condition was stable and he displayed no distinct neurologic or unstable findings as a result of the allowed conditions in the claim. He stated that the Injured Worker could engage in sedentary work activity with the avoidance of excessive overhead use of the right arm as well as avoidance of excessive lifting, bending and twisting.

The Injured Worker was examined at the request of the Industrial Commission by Dr. Sinha on 05/13/2014 with regard to the allowed psychological condition in the claim. Dr. Sinha indicated that the Injured Worker continues to have ongoing memory issues and that his most significant difficulty is with recent memory. She noted that the Injured Worker reported difficulty focusing on task and that his verbal fluency was impaired as well. She further noted that the Injured Worker's sequencing abilities were impaired.

With regard to activities of daily living, Dr. Sinha concluded that the Injured Worker had a mild impairment. She noted that the Injured Worker is able to attend activities related to his children's school and sports activities including coaching his daughter's softball team.

With regard to social functioning, Dr. Sinha concluded that the Injured Worker was moderately impaired as the Injured Worker reports minimal contact with individuals outside of his family and he tries not to engage much with others.

With regard to concentration, persistence and pace, Dr. Sinha concluded that the Injured Worker was moderately impaired. She noted the Injured Worker's ability to concentrate is varied. She noted that the Injured Worker's

memory appears to be problematic but that the Injured Worker functions relatively well in attending to self-assigned tasks, many of which require persistence. She noted that the Injured Worker does well with routine.

With regard to adaptation, Dr. Sinha concluded that the Injured Worker has a mild impairment. She stated that the Injured Worker has adapted to changes in his functioning since the industrial injury and that his cognitive weaknesses have improve[d] considerably since the industrial injury. She further noted that the Injured Worker has demonstrated initiative and motivation as demonstrated by his recent activities of daily living as well as assuming responsibility for coaching his children's sports teams.

Dr. Sinha concluded that the Injured Worker['s] psychological condition has reached maximum medical improvement and results in a 23% whole person impairment rating. She concluded that based upon the allowed psychological condition in the claim the Injured Worker is capable of work. She stated that the Injured Worker's memory and attention abilities would be the most significant limitation in work related activities. She stated that job tasks that require new learning and marked attention to detail would not be recommended based upon his memory problems. She concluded that the Injured Worker can at a minimum work part-time, up to four hours a day with generous breaks built-in. She noted that this employment would ideally [involve] routine jobs and would also involve minimal new learning on a[n] ongoing basis.

The Staff Hearing Officer finds that the Injured Worker's orthopedic and psychological conditions are permanent and have reached maximum medical improvement. The Hearing Officer finds that the allowed orthopedic and psychological conditions preclude the Injured Worker from returning to his former position of employment but that * * * the Injured Worker could engage [in] sedentary employment activity which involves part-time work, up to four hours a day and also involves routine employment and minimal new learning on an ongoing basis. The sedentary work should also avoid overhead use of the right arm and avoid excessive lifting, bending and twisting.

The Staff Hearing Officer finds that the Injured Worker is 46 years of age, has a 10th grade education with a GED and is

able to read, write and engage in basic mathematical computation without difficulty. The Injured Worker has been employed as a maintenance worker and mail carrier for the U.S. Postal Service, as well as a construction worker and laborer.

The Staff Hearing Officer finds that the Injured Worker's age of 46 is an asset with regard to the Injured Worker's ability to return to work and to compete in the workforce. The Hearing Officer finds that the Injured Worker's age is not a barrier which would prevent him adapting to new work rules, processes, methods and procedures involved in a new occupation, especially an occupation which the Injured Worker has not engaged in the past.

The Staff Hearing Officer further finds that the Injured Worker's 10th grade education with a GED as well as his ability to read, write and perform basic math without difficulty would be an asset with regard to the Injured Worker's returning to employment. The Hearing Officer further finds that the Injured Worker's educational achievement would be an asset with regard to the Injured Worker learning to perform some other type of employment or engaging in rehabilitation.

The Injured Worker's past work and experience has involved employment as a maintenance worker and mail carrier for the U.S. Postal Service as well as employment as a construction worker and factory worker. The Hearing Officer notes that the Injured Worker's past work experience has been semi-skilled in nature and has involved supervisory work. The Injured Worker['s] employment as a construction worker required him to read blue prints and to measure and cut materials needed to construct various buildings. The Injured Worker's construction job involved supervising between 3 and 5 individuals. This job required that the Injured Worker oversee the work of others and to [e]nsure that the work completed conformed to specific standards.

The Injured Worker's employment as a machine operator/laborer at a door factory required the Injured Worker to read purchase orders as well as supervise the work of 3 to 4 individuals. This job also required the Injured Worker to ensure that work was completed by other individuals according to specific standards.

The Hearing Officer finds that the Injured Worker's ability to perform semi-skilled employment in the past is evidence that he should be able to perform at least unskilled entry level employment in the future. The Hearing Officer further finds that this ability to engage in semi-skilled employment also demonstrated that the Injured Worker has aptitude for retraining. Therefore, the Hearing Officer finds that the Injured Worker's past work experience is a positive factor with regard to the Injured Worker returning to work.

A review of the file indicates that the Injured Worker has not engaged in any effort at vocational rehabilitation. The Hearing Officer notes that permanent total disability compensation is a compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. It is not unreasonable to expect that an Injured Worker is to participate in returning to work efforts to the best of his ability or to take an initiative to improve employment potential. State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250. The Hearing Officer finds that the Injured Worker has not engaged in any vocational rehabilitation to improve his prospects for returning to the workforce. The Hearing Officer finds that this negatively reflects on the Injured Worker's application for permanent total disability compensation.

Based upon the Injured Worker's age, education and work experience as well as the restrictions noted by Dr. Brannan and Dr. Sinha, the Hearing Officer finds that the Injured Worker is able to engage in sustained remunerative employment work activity and is not permanently and totally disabled.

Therefore, the Hearing Officer denies Injured Worker's Application for Permanent Total Disability Compensation filed 02/28/2014.

{¶ 29} 12. On October 18, 2014, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 30} 13. On October 23, 2014, relator, Timothy Bonnlander, filed this mandamus action.

Conclusions of Law:

{¶ 31} Two issues are presented: (1) whether the commission can rely upon the reports of Dr. Sinha in determining residual functional capacity when the SHO's order fails to specifically find that relator needs "generous breaks" or "multiple breaks" while working as Dr. Sinha found in her reports, and (2) whether Dr. Sinha's finding that relator can "at a minimum work part-time, up to 4 hours a day, with generous breaks built in" is so restrictive that it precludes sustained remunerative employment under relevant case law.

{¶ 32} The magistrate finds: (1) the SHO's failure to specifically find that relator needs "generous breaks" or "multiple breaks" while working as Dr. Sinha found does not preclude commission reliance upon Dr. Sinha's reports, and (2) Dr. Sinha's finding that relator can "at a minimum work part-time, up to 4 hours a day, with generous breaks built in" is not so restrictive that it precludes all sustained remunerative employment under relevant case law.

{¶ 33} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

{¶ 34} In his brief, relator argues:

> The Staff Hearing Officer in this case did state what evidence [he] relied upon, Dr. Sinha's report, but did not explain why he did not accept the finding of impairment by Dr. Sinha that Mr. Bonnlander would need generous breaks or multiple breaks. He omitted that limitation from his findings but accepted the rest of Dr. Sinha's opinion without explanation. In doing so and in denying Relator's application for permanent and total disability, the Industrial Commission did not comply with the requirements of [*State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991)].

(Relator's brief, 8.)

{¶ 35} The paragraph of the SHO's order critical to relator's argument states:

> The Staff Hearing Officer finds that the Injured Worker's orthopedic and psychological conditions are permanent and have reached maximum medical improvement. The Hearing Officer finds that the allowed orthopedic and psychological

conditions preclude the Injured Worker from returning to his former position of employment but that [] the Injured Worker could engage [in] sedentary employment activity which involves part-time work, up to four hours a day and also involves routine employment and minimal new learning on an ongoing basis. The sedentary work should also avoid overhead use of the right arm and avoid excessive lifting, bending and twisting.

{¶ 36} The portion of Dr. Sinha's narrative report critical to relator's argument, states:

He can at a minimum work part-time, up to 4 hours a day, with generous breaks built in.

{¶ 37} Also critical to relator's argument is Dr. Sinha's handwritten statement on the "Occupational Activity Assessment" that relator will require "multiple breaks" while working.

{¶ 38} Here, relator observes that, in the above noted paragraph of the SHO's order, the SHO states that he "finds" the items listed in the paragraph. That is, the SHO states that he "finds" that the orthopedic and psychological conditions are permanent and have reached maximum medical improvement ("MMI"). Further, the SHO states that he "finds" that the allowed conditions preclude a return to the former position of employment. Relator argues that the paragraph is an exclusive listing of the SHO's findings.

{¶ 39} In the paragraph of the SHO's order immediately above the paragraph just discussed, the SHO states that Dr. Sinha "concluded that the Injured Worker can at a minimum work part-time, up to four hours a day, with generous breaks built in." Relator argues that the just-quoted language is not a finding of the SHO, but merely a reference to what Dr. Sinha has stated in her report. In short, relator interprets that the SHO failed to make a finding that relator will need "generous breaks" in order to perform work. Apparently, relator somehow concludes that the SHO's omission in finding a need for "generous breaks" was intended to convey a rejection of a need for "generous breaks."

{¶ 40} Relator's interpretation of Dr. Sinha's report is flawed. To begin, there is no direct indication in the SHO's order that the SHO intended to strike the "generous

breaks" language from Dr. Sinha's report, which was specifically relied upon by the SHO to determine residual functional capacity.

{¶ 41} Moreover, the commission successfully answers relator's interpretation of Dr. Sinha's report by pointing out that Dr. Sinha states in the second to the last paragraph of the order:

> Based upon the Injured Worker's age, education and work experience as well as the *restrictions* noted by Dr. Brannan and Dr. Sinha, the Hearing Officer *finds* that the Injured Worker is able to engage in sustained remunerative employment work activity and is not permanently and totally disabled.

(Emphasis added.)

{¶ 42} Thus, the above quoted paragraph of the SHO's order clearly indicates that the SHO adopted all of the "restrictions" noted by Drs. Sinha and Brannan. Dr. Sinha's opinion that relator will need "generous breaks" and "multiple breaks" in order to work are indeed "restrictions" as referenced in the second to the last paragraph of the order.

{¶ 43} Based upon the above analysis, relator's argument as to the first issue lacks merit.

## Second Issue

{¶ 44} In *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997), the Supreme Court of Ohio held that "part-time work constitutes sustained remunerative employment." *Id.* at 362. However, the *Toth* court did not hold that any part-time work — no matter how few the hours per week the job might entail — is considered sustained remunerative employment.

{¶ 45} On a case-by-case basis, guidance from this court has developed over time as to what part-time employment may be viewed as sustained remunerative employment.

{¶ 46} Recently, in *State ex rel. Sheller-Chiles v. Indus. Comm.,* 10th Dist. No. 13AP-245, 2014-Ohio-313, ¶ 5, this court had occasion to review the case law establishing the standard for determining whether part-time work capacity constitutes "*sustained*" remunerative employment. This court held that a work capacity of "four or more hours per day" constitutes sustained remunerative employment. *Id.*

{¶ 47} At issue here is commission reliance upon the reports of Dr. Sinha who opines that relator "can at a minimum work part-time, up to 4 hours a day * * *." In his brief, relator argues:

> As Mr. Bonnlander is only able to work up to four hours a day and has additional restrictions, including the need for generous, multiple breaks, when applying this court's decisions and interpretation of part-time work, Mr. Bonnlander is so restricted by his limitations such that part-time work would not be considered sustained remunerative employment.

(Relator's brief, 11.)

{¶ 48} Analysis begins with the observation that the ability to work "up to" a four-hour day meets the standard set by this court in *Sheller-Chiles*, that a capacity for work of "four or more hours per day" can be sustained remunerative employment. That is, the magistrate disagrees with relator's suggestion that his ability to work "up to" a four-hour day falls just short of the standard. In the magistrate's view, an ability to work "up to" a four-hour day is indeed the ability to work a four-hour day.

{¶ 49} Moreover, the magistrate observes that Dr. Sinha found that relator can "at a minimum" work "up to" a four-hour day. Use of the term "at a minimum" infers that relator can work more than "up to" the four-hour day that Dr. Sinha opines he can do.

{¶ 50} Relator's pointing out that the four-hour work day must include "generous, multiple breaks" fails to advance his argument that Dr. Sinha's reports fail to support an ability to perform sustained remunerative employment.

{¶ 51} Thus, Dr. Sinha's reports provided the commission with some evidence supporting its determination that relator retains the residual functional capacity for sustained remunerative employment.

{¶ 52} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).