[Cite as *Webster v. Altenloh Brinck & Co., U.S., Inc.*, 2021-Ohio-1072.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

Teresa M. Webster

Court of Appeals No. WM-20-001

Appellant

Trial Court No. 18CI000120

v.

Altenloh Brinck & Co., U.S., Inc., et al.

**DECISION AND JUDGMENT**

Appellees

Decided: March 31, 2021

* * * * *

Marc G. Williams-Young and Nicholas S. Jacoby, for appellant.

Carrie L. Urrutia and Melissa A. Ebel, for appellee Altenloh Brinck &
Co., U.S., Inc.

Dave Yost, Ohio Attorney General, and Anastasia K. Hanson,
Assistant Attorney General, for appellee Administrator, Ohio Bureau
of Workers' Compensation.

* * * * *

**OSOWIK, J.**

**{¶ 1}** Appellant, Teresa Webster appeals from an order of the Williams County

Court of Common Pleas, granting the motion for directed verdict of appellees Altenloh

Brinck & Co. (ABC) and the Administrator of the Ohio Bureau of Workers'
Compensation (BWC) regarding the claim for participation in the fund for the condition
"closed head injury." Finding no error, we affirm.

## I. Background

{¶ 2} Webster worked for ABC beginning in 2016, first as a temporary worker,
and later as a permanent employee for ABC. Webster's job duties included operating
AMBA machinery, which made screws, and keeping the shop floor around the machines
clean. Webster worked regular shifts of ten-hour days, Monday through Thursday, often
with an extra day of mandatory overtime, either Friday, Saturday, or Sunday. The work
was physically challenging, requiring an ability to stand all day and lift 50 pounds.

{¶ 3} On Tuesday, March 20, 2018, Webster fell and struck her head and back
while mopping up coolant that had leaked from an AMBA machine. As she slipped,
Webster grabbed a tray of screws to stop her fall. She was struck by the tray and the
screws as she landed on the floor. Co-workers helped Webster to the break room, noting
her shaky demeanor and need for support. After a safety officer checked Webster out, a
co-worker transported Webster to a nearby hospital in Bryan. The emergency room
doctor examined Webster for pain in the back of the head and neck, performed a CT scan
of her head and spine, and gave Webster an injection for her pain. The hospital records
contained ICD[1] codes for "closed head injury" and "sprain of joints and ligaments of

---

[1] The ICD, or International Classification of Diseases, was initially created by the World
Health Organization for mortality coding and classification for death certificates. In the

unspecified parts of neck." Webster was prescribed medications for pain and muscle spasms, to use as needed, and cleared to return to work without restrictions.

{¶ 4} Webster took the next two work days as vacation days and returned to work on Monday, March 26. She completed a work week, but continued to experience pain and swelling in her neck. Webster reported to ABC's human resources department the following Monday, April 2. Webster indicated that she did not "feel right" and had pain in her head and neck. ABC referred her to Dr. Annette Brightman, a chiropractor who could see her immediately.

{¶ 5} Dr. Brightman treated Webster's neck injury, performing an adjustment to the cervical spine. Webster performed rehabilitation exercises and applied ice at home. Dr. Brightman first excused Webster from work, but then worked with ABC to permit Webster to return to work with light duty. Webster continued treating with Dr. Brightman for eight appointments, and then stopped. She later sought treatment from an occupational health provider, complaining of pain, spasms, stiffness, and tightness in her neck.

{¶ 6} Webster filed a claim for workers' compensation, seeking the right to participate for injury sustained to her "head/neck" as a result of "slipping in a puddle

United States, the ICD, Clinical Modification (CM) was developed for standardized medical diagnoses, required for use by all entities covered by HIPAA. *See* Centers for Disease Control and Prevention, "National Center for Health Statistics: Background," available at https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm (accessed Mar. 30, 2021).

3.

around machine hit back of head neck feels stiff."[2]  Webster's claim was initially allowed, pursuant to an order dated April 4, 2018, for "closed head injury" and "sprain of joints and ligaments of [unspecified] parts of neck."  After review through the administrative appeals process, Webster's claims for "closed head injury" and "sprain of joints and ligaments of [unspecified] parts of neck" were ultimately disallowed, and Webster appealed to the common pleas court seeking to participate for both conditions.

{¶ 7} The matter proceeded to a jury trial on November 26 and 27, 2019.  Webster and her co-workers testified regarding the fall and her injuries, with Webster also describing her treatment and struggle to return to work without pain.  Dr. Brightman also testified regarding her treatment of Webster.  She acknowledged that, as a chiropractor, she mainly treated a patient through palpation and adjustments to align the bones and joints and alleviate muscle spasms and tightness.  She testified that she did not prescribe medicine as part of her treatment and could not diagnose brain injury.  Webster's trial counsel attempted to introduce the ICD10 codes as "reliable" evidence of a "closed head injury," but the trial court sustained appellees' objections to such evidence.

{¶ 8} As to treating the symptoms she observed, Dr. Brightman's only mention of the head related to her treatment of the neck, in that she adjusted Webster's head "as it sits in relationship to the neck[.]"  Dr. Brightman indicated a "closed head injury" diagnosis merely indicated that Webster fell and hit her head, and she provided no

---

[2] Webster completed a First Report of Injury (FROI) form in the emergency room.

4.

testimony as to her observation of any symptoms of a head injury, resulting from Webster's fall. As to the neck and back injury, Dr. Brightman described symptoms of injury to specific nerves, joints, and tendons, reported by Webster and observed by Dr. Brightman, and the treatment she provided to these areas. Even so, Dr. Brightman testified that Webster sustained a "closed head injury" based on Webster's report of the fall and the diagnosis contained within the emergency room records, over the objection of appellees as to her qualifications to diagnose a head injury.

{¶ 9} At the close of Webster's case-in-chief, appellees moved for a directed verdict regarding the claim for "closed head injury." The trial court initially granted the motion, and Webster moved to exclude portions of the appellees' expert witness testimony related to head injury. Because the testimony would be presented by video, appellees withdrew their motion for directed verdict and the trial court vacated its ruling. Appellees presented the testimony without redactions.

{¶ 10} Dr. Harvey Popovich testified for appellees, appearing by videotaped deposition. Dr. Popovich is board certified in occupational and environmental medicine. He reviewed Webster's emergency room record, and noted that there was nothing in that record to demonstrate an injury to the head, with no report of headache or loss of consciousness, no nausea or vomiting, no deviation of gaze or facial paralysis, no articulated loss of vision,[3] and no signs of trauma to the head, itself. He also performed

---

[3] Webster told the ER doctor her vision was "off," but could not provide further description and doctors did not note vision problems in the physical examination.

5.

an independent medical examination of Webster, prior to trial, and noted a lack of any symptoms typical for a head injury. Dr. Popovich did note minor changes in Webster's range of motion in her neck and cervical spine, but attributed these symptoms to degenerative changes and a prior injury.

{¶ 11} Dr. Thomas Lieser also testified for appellees, appearing by videotaped deposition. He is board certified in occupational medicine. Dr. Lieser reviewed Webster's records but did not conduct an independent examination of Webster, herself. He noted the lack of any "objective evidence of trauma to the head" in the emergency room record, in contrast to the emergency room physician's diagnosis of "closed head injury." He opined that, without objective evidence, there were no findings to support the diagnosis because the examination findings were "all very normal."

{¶ 12} Appellees renewed their motion for directed verdict as to the claim for "closed head injury" at the close of their case. The trial court granted the motion, and the jury considered only the claim for the neck injury in their deliberation. The jury returned a verdict permitting Webster to participate for her claim of "sprain of joint and ligaments of unspecified parts of neck."

{¶ 13} Webster filed a timely appeal of the trial court's ruling on the motion for directed verdict.

## II. Assignments of Error

{¶ 14} Webster now appeals the judgment related to her entitlement to participate for "closed head injury," and raises the following as error in her appeal:

6.

I.  The trial court erred in granting appellees' motion for directed verdict as to Ms. Webster's right to participate in the workers' compensation fund for the medical injury of "closed head injury."

II.  The trial court erred in failing to exclude argument and testimony regarding the medical condition of "traumatic brain injury."

III.  The trial court erred in precluding testimony involving and admission of trial Exhibits 19, 19a, 19b and 25 which distinguish the diagnosis of "closed head injury" and other medical injuries to the head.

### III.  Analysis

{¶ 15} In her first assignment of error, Webster argues the trial court erroneously granted the motion for directed verdict regarding participation for the condition, "closed head injury."  In granting a motion for directed verdict, a trial court must construe the evidence most strongly for the nonmoving party, and grant the motion only if "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."  *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, 982 N.E.2d 666, ¶ 14, quoting Civ.R. 50(A)(4).  Because the motion presents only questions of law, our review of the trial court's decision is de novo. *Id.*, citing *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4.

{¶ 16} The dispositive issue, in this case, is whether Webster presented sufficient evidence to support the allowed condition of "closed head injury." In arguing this issue, the parties argue the meaning of "closed head injury" as well as the substance of Dr. Brightman's opinion regarding the head injury. The trial court found, at the close of Webster's case, that there was insufficient evidence, stating:

> I reviewed your arguments, I reviewed the case law that was cited, I reviewed the testimony that we all heard yesterday, including that of Dr. Brightman. I also applied the directive of Civil Rule 50 in reaching a decision on the motion for directed verdict on the issue of the closed head injury. Based upon that review, I do find that reasonable minds could not differ as to the proper disposition on that issue. The issue on whether or not [Webster] can or has met her burden of proof on whether the fall on March 20th of 2018 proximately caused the closed head injury, after construing the evidence most favorably in favor of Ms. Webster, I find that she has not met and cannot meet her burden of proof. And therefore I am granting directed verdict in favor of the employer and BWC on the issue of closed head injury.

After appellees withdrew their motion, the trial court vacated its ruling. But upon renewal of the motion, the trial court again granted the motion for directed verdict, noting the ruling "remains the same." The trial court explained, "The evidence that we heard

8.

from the defense witnesses today does nothing to change my decision nor do the additional arguments heard from counsel change my decision."

{¶ 17} Webster relied on her own testimony and testimony of her co-workers, describing the fall and her appearance immediately after the fall, in addition to medical testimony regarding her symptoms and treatment related to her neck injury. Appellees, in contrast, presented expert testimony regarding the lack of medical evidence to support a diagnosis of head injury, citing the lack of symptoms noted by the emergency room doctor, and the lack of any testimony of head injury symptoms by Dr. Brightman based on her own examination of Webster.

{¶ 18} Webster had the burden of demonstrating her right to participate in the fund for "closed head injury." *Bennett*, 134 Ohio St.3d 329, 2012-Ohio-5369, 982 N.E.2d 666, at ¶ 18, citing *White Motor Corp. v. Moore*, 48 Ohio St.2d 156, 357 N.E.2d 1069 (1976), paragraph one of the syllabus; *Oswald v. Connor*, 16 Ohio St.3d 38, 41-42, 476 N.E.2d 658 (1984). "In an appeal under R.C. 4123.512, the issues to be addressed by the trial court would be those relating to the presence of a medical condition and whether or not it was a work-related injury." *Willis v. Ohio Dept. of Transp.*, 2016-Ohio-1593, 50 N.E.3d 581, ¶ 46 (4th Dist.), citing *State ex rel. Forrest v. Anchor Hocking Consumer Glass*, 10th Dist. Franklin No. 03AP-190, 2003-Ohio-6077, ¶ 6; *see also Taylor v. ProMedica Mem. Hosp.*, 2017-Ohio-7110, 95 N.E.3d 909, ¶ 9 (6th Dist.), citing R.C. 4123.01(C) (injured worker must demonstrate a workplace injury). An "injury" is statutorily defined as including "any injury, whether caused by external accidental means

9.

or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."  R.C. 4123.01(C).

{¶ 19} Webster argues for an expansive consideration of injury, citing the dictionary definitions of "diagnosis," "head injury," and "closed head injury," and referencing the diagnosis code used in her emergency room record as reliable evidence of a "closed head injury."  The term "closed head injury" was also defined at trial by appellees' medical experts.

{¶ 20} Dr. Popovich testified that the term "closed head injury" means "a brain injury without disruption of the scalp or skull."[4]  Dr. Popovich explained the process of diagnosing the injury as:

> Well, there's three parts to that determination or evaluation.  The first part is talking to the injured party and eliciting their symptoms, the second part would be physical examination, looking for any abnormality in the central nervous system or the peripheral nervous system, and the third part would be any objective studies such as CTs or MRIs.

He described possible reported symptoms, indicative of a "closed head injury," as:

> They could have something as simple as a headache, they could have changes in their vision, they could have changes in their level of

---

[4] Dr. Popovich also equated a "closed head injury" with a traumatic brain injury, but later clarified that there could be differing degrees of injury in a "closed head injury," including concussion or a traumatic brain injury, with potentially overlapping diagnoses.

consciousness, such as seizures or syncopal, that is passing out, episodes, they could have symptoms in their arms or their legs, they could have nausea or vomiting, the list goes on from there.

As to physical findings, Dr. Popovich testified:

We usually start with level of function, how is someone thinking, is their general fund of knowledge intact, can they do simple mathematical calculations, do they remember what they had for breakfast, do they remember their mother's maiden name, so all of these and more pertain to level of consciousness and cognitive functioning, ability to think.

* * *

From there we go to cranial nerves, ability to see, hear, smell, how does the face function, is it symmetrical, is the tongue where it belongs, are the pupils reactive to light and accommodation.

From there we go to the extremities, we check strength reflexes sensation, we check balance and ability to walk normally.

Finally, as to objective tests, Dr. Popovich indicated CTs or MRIs may be used to identify injury.

{¶ 21} Dr. Lieser also defined "closed head injury" and reviewed Webster's medical record for symptoms of the injury, stating:

Well, it involves the head, and the term closed means that there is no obvious defect in the skeletal structures such as, in this case, the skull, it's

closed, it hasn't been fractured, there is no evidence of any ruptured membranes or structures involving the head, therefore, it's a closed head injury.

And oftentimes there is no objective evidence, thus they use the term closed head injury.

* * *

There was a history that [Webster] had hit her head, but the examination findings were all very normal. There was no evidence of trauma, there was no evidence of trauma to the exterior structures, the head, the scalp, there was no evidence of trauma to the skull or the other bony structures, and there was no evidence of trauma to the contents of the skull, the brain, the nerves.

{¶ 22} In contrast, Webster's expert, Dr. Brightman, testified that the diagnosis of "closed head injury," contained within the emergency room record, simply meant that Webster "fell and hit her head."[5] Dr. Brightman clarified, stating, "It does not mean that there was a concussion or any kind of brain trauma. It's not indicative of that. Just that she hit her head." Dr. Brightman also appeared to indicate that such injury could be asymptomatic and require no treatment at all.

---

[5] The emergency room doctor who initially diagnosed Webster did not testify at trial.

12.

{¶ 23} We find no detailed explanation of a "closed head injury" in Ohio workers' compensation law, characterizing such injury as an asymptomatic injury. A "closed head injury," moreover, is generally described as an injury "where there hasn't been penetration or fracture of the skull," with additional diagnoses based on severity of the resulting symptoms. *See, e.g., State ex rel. Jerreals v. Indus. Comm.*, 10th Dist. Franklin No. 06AP-283, 2007-Ohio-1472, ¶ 42 (noting postconcussion syndrome resulting from a closed head injury, with symptoms including headache, intellectual impairment, and personality changes).

{¶ 24} Appellees presented expert testimony that addressed brain injury as a result of a "closed head injury."[6] Medical experts testifying regarding a "closed head injury" typically note the potential for injury to the brain. *See, e.g., State v. Chen*, 2010-Ohio-2289, ¶ 39 ("victim suffered a closed head injury with loss of consciousness, meaning

---

[6] At trial, and now on appeal, Webster sought to rely on the ICD10CM codes as evidence of her head injury. For billing purposes, "[p]roviders must use the appropriate 'International Classification of Diseases [ICD], clinical modification' codes for the condition(s) treated to indicate diagnoses." Ohio Adm.Code 4123-6-25(C)(2). The BWC guidelines regarding the S09.90 classification provide:

> Often on initial examination, the provider will not have a specific diagnosis and will request closed head injury. If the mechanism of injury (MOI) supports a closed head injury, than this condition should be allowed and a more specific condition may be requested upon subsequent treatment and examination. * * *

The Ohio Bureau of Workers' Compensation Diagnosis Guidelines are available online at https://info.bwc.ohio.gov/wps/portal/gov/bwc/for-providers/claims-and-reimbursement/diagnosis-guidelines. (accessed Mar. 30, 2021).

13.

the brain was jarred"); *State v. Purdon*, 12th Dist. Brown No. CA97-03-009, 1997 WL 700077 (Nov. 10, 1997) ("no obvious external skull fracture, but some internal structure such as the brain is injured").

{¶ 25} While we find no Ohio workers' compensation case providing a detailed definition of "closed head injury," other jurisdictions have explored the definition in applying their own version of workers' compensation law, noting the potential for brain injury. For example, experts have defined "closed head injury" as an injury that results from an impact, in which "the brain reverberates within skull and because the skull is not fractured, the brain absorbs the impact." *May v. Indus. Com'n*, 195 Ill.App.3d 468, 483-484, 552 N.E.2d 258 (Ill.App.1990). The injury has also been explained as "trauma to the brain in a global way" instead of focusing on a specific area of the brain, with symptoms manifesting in "higher competent motions." *Crisp v. SouthCo.*, 401 S.C. 627, 633-634, 738 S.E.2d 835 (2013).

{¶ 26} While R.C. 4123.01(C) defines "injury" expansively, as "any injury" arising out of employment, the statute does not define what is meant by the term "injury," specifically. In distinguishing between an "injury" and "occupational disease" under a prior version of the workers' compensation law, "injury" was defined as "'[h]urt or loss caused to or sustained by a person; harm, detriment, damage.'" *Cincinnati St. Ry. Co. v. Clock*, 50 Ohio App. 139, 142, 197 N.E. 592 (1st Dist.1934), quoting Shorter Oxford Eng. Dictionary (1933). Aside from testimony that Webster struck her head in the fall,

14.

there was no testimony regarding harm to Webster's head, and no expert testimony that described the symptoms of a "closed head injury," as experienced by Webster.

{¶ 27} "[F]ew injuries could be more 'internal and elusive' than a closed head injury unaccompanied by any observable, external signs of trauma." *Ogolo v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 99675, 2013-Ohio-4921, ¶ 14. Where there are no outward signs of a closed head injury, courts require expert, medical testimony to establish the existence of the injury. *See, e.g., Ogolo* at ¶ 20 ("without establishing the existence of a closed head injury accompanied by observable, external signs of trauma, appellant was required to present expert medical testimony").

{¶ 28} Without describing the manifestation of her head injury, Webster relies on the "any injury" definition, arguing the "Revised Code does not require or mandate any degree of medical seriousness or disability." She cites to lay testimony, indicating that she was unsteady or wobbly, with her medical expert offering no opinion regarding the actual harm arising from a head injury. Significantly, there was no testimony related to any symptoms and no testimony regarding even a potentially latent injury.

{¶ 29} Cases involving closed head injuries, however, overwhelmingly describe the harm, with more specific diagnoses emerging after the initial diagnosis. *See, e.g., State ex rel. Bonnlander v. Hamon*, 10th Dist. Franklin No. 14AP-855, 2015-Ohio-4038 (cognitive deficits and depressive disorder linked to closed head injury); *State ex rel. Sears Roebuck & Co. v. Campos*, 10th Dist. Franklin No. 04AP-1266, 2005-Ohio-5700 (neurological examination revealed loss of fine motor control in right hand and muscle

15.

weakness in upper right arm); *Almanza v. Kohlhorst*, 85 Ohio App.3d 135, 138, 619 N.E.2d 442 (3d Dist.1992) (closed head injury resulted in mental, physical, and emotional deficits).

{¶ 30} Webster does not confront the lack of expert testimony regarding symptoms to support her head injury diagnosis. Significantly, she argues an unspecified head injury based on the "mechanism of injury" and not based on documented symptoms. After thorough review of her testimony, Dr. Brightman's conclusion regarding a "closed head injury" lacks any reference to her own examination and observation of symptoms indicating a head injury. Appellees' medical experts, on the other hand, highlighted the lack of any notation in the medical record to support a head injury diagnosis, and Dr. Popovich performed his own assessment of Webster, noting no symptoms to support the diagnosis.

{¶ 31} Upon careful consideration of the evidence of a "closed head injury," we find Webster failed to satisfy her burden of producing sufficient medical testimony to support the ultimate conclusion recited by Dr. Brightman. An expert's conclusion requires a scientific basis or methodology to be considered by the trier of fact. *See Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 18. Lacking any such basis, we find the trial court correctly granted the motion for directed verdict, and Webster's first assignment of error is not well-taken.

16.

**{¶ 32}** Based on our determination as to the first assignment of error, Webster's remaining assignments of error, pertaining to evidentiary rulings relative to a "closed head injury," are moot.

### IV. Conclusion

**{¶ 33}** For the forgoing reasons, we affirm the judgment of the Williams County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

Christine E. Mayle, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.