[Cite as *State ex rel. Bonnlander v. Hamon*, 2019-Ohio-3861.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Timothy Bonnlander, | : | |
| Relator, | : | |
| | | No. 18AP-501 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Robert and Marvin Hamon et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on September 24, 2019

**On brief:** *Mark B. Weisser,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Timothy Bonnlander, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation on grounds he had abandoned the workforce and ordering the commission to grant him PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision on February 27, 2019, including findings of fact and conclusions of law, which is appended hereto. The magistrate found the commission abused its discretion in determining relator should be denied PTD compensation and recommended this court grant relator's writ and order the commission

to find that relator is permanently and totally disabled and eligible for PTD compensation. For the following reasons, we sustain the commission's objections and deny the requested writ.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   On or about October 13, 1992, relator sustained injuries in the course of his employment.   The commission allowed his claim for a variety of conditions more thoroughly detailed in the magistrate's decision, including closed head injury, fractures of his right shoulder and C-6 cervical spine, degenerative disc disease, and depressive disorder. After several periods of receiving temporary total disability ("TTD") compensation, relator returned to employment and worked from 2000 through either late 2008 or early 2009[1] as a mail carrier and a maintenance worker for the U.S. Post Office. Relator then received TTD compensation again through November 2013.

{¶ 4}   On February 28, 2014, relator filed his first application for PTD compensation with the commission, and a hearing on the matter was held on September 11, 2014.  By letter dated September 17, 2014, the commission denied the PTD application.  In pertinent part, the commission found relator's orthopedic and psychological conditions are permanent and have reached maximum medical improvement and, although relator could not return to his former position, he could engage in part-time, sedentary, and routine employment activity up to four hours a day.[2]  Based on relator's assets, including his age (46), education, and past work experience, as well as the restrictions noted by the physicians, the commission found relator able to engage in sustained remunerative employment.  The commission noted the fact that relator had not engaged in any effort at vocational rehabilitation to improve his prospects for returning to the workforce "negatively reflects" on his application but did not predicate relator's ability to work on vocational rehabilitation or based its decision to deny PTD compensation on the failure to

---

[1] We note the Supreme Court of Ohio stated relator "last worked in December 2008," the SHO in this case found relator worked last either in late 2008 or early 2009, and the magistrate in this case stated, as a finding of fact, that relator "continued to work * * * until 2009." *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 3; appended Mag.'s Decision at ¶ 30.  Both dates are cited throughout the record.  The slight discrepancy in the date relator last worked is not material to our resolution of this action.
[2] The limitation of working part-time up to four hours a day was the recommendation of Debjani Sinha, Ph.D., who specifically considered relator's allowed psychological conditions and his related ongoing memory, attention, and social function issues.

engaged in vocational rehabilitation.[3] *State ex rel. Bonnlander v. Hamon*, 10th Dist. No. 14AP-855, 2015-Ohio-4038, ¶ 28. The commission ultimately concluded relator was not permanently and totally disabled and denied PTD compensation.

{¶ 5} Relator filed a complaint in mandamus in this court on October 23, 2014 requesting a writ of mandamus ordering the commission to vacate its order denying him PTD compensation. Prior to a decision from this court on mandamus, the Bureau of Workers' Compensation ("BWC") determined relator was eligible for vocational rehabilitation and referred him for vocational rehabilitation services. Relator met with the vocational rehabilitation case manager in February 2015, but his vocational rehabilitation case was closed on March 26, 2015 due to "medical instability." (Stipulated Record at 87.)

{¶ 6} In the narrative justifying closure of the vocational rehabilitation case, the case manager stated she "heavily" considered relator's self-assessment that his inability to retain information may be his biggest barrier to re-employment. (Stipulated Record at 86.) The case manager was unable to obtain information regarding relator's return-to-work outlook and psychological conditions from relator's treating psychologist, and she therefore followed the recommendation of the latest psychological report indicating relator could work part-time accommodating for variable concentration with minimal new learning and multiple breaks. The case manager also stated the managed care organization declined both "[a]n Assessment Plan recommendation for a Neuro-Psych consult, to better determine if [relator's] cognitive issues would in fact be a barrier, or manageable," and "[a]n Assessment Plan recommendation to have [relator] evaluated to determine if reconditioning might be helpful to improve his physical abilities" due to the age of the claim. (Stipulated Record at 86-87.) Therefore, it was the case manager's opinion that relator "is not feasible for vocational rehabilitation or return to work." (Stipulated Record at 87.)

{¶ 7} On September 30, 2015, this court in *Bonnlander*, 2015-Ohio-4038, denied relator's first request for a writ of mandamus, and in May 2017, the Supreme Court of Ohio

---

[3] We note the magistrate's findings of fact states, "as a second reason, the commission also denied [relator's] application for PTD compensation on the grounds that relator had not participated in vocational rehabilitation." (Mag.'s Decision at ¶ 33.) We disagree that relator's non-participation in vocational rehabilitation was a second reason for the commission's September 2014 order to deny PTD compensation and take judicial notice of the SHO order as stated in *State ex rel. Bonnlander v. Hamon*, 10th Dist. No. 14AP-855, 2015-Ohio-4038, ¶ 28.

affirmed our decision in *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, holding:

> [T]here is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis. The commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis. Here, Dr. Sinha opined that [relator's] psychological condition limited him to four hours of work a day with multiple breaks. It was within the commission's discretion to rely on Dr. Sinha's report as evidence to support the conclusion that [relator] was capable of up to four hours of sedentary work a day.

*Id.* at ¶ 20.

{¶ 8} Thereafter, on October 12, 2017, relator filed his second application for PTD compensation with the commission and submitted the report of Jennifer Stoeckel, Ph.D., who concluded relator was permanently and totally disabled from all forms of sustained remunerative employment based on the allowed psychological condition of major depressive disorder and the cognitive impairments secondary to the closed head injury allowed in the claim. At the request of the commission, relator was examined by Stephen W. Halmi, Psy.D., who concluded relator was incapable of remunerative employment based on allowed psychological claims, and Gary Ray, M.D., who concluded relator was incapable of work based on allowed orthopedic conditions.

{¶ 9} In an initial tentative order, a hearing officer granted PTD compensation based on the new physician reports. However, on considering the objection filed by the administrator of the BWC, the commission vacated the tentative order and referred the matter to a hearing examiner to address disputes on legal issues.

{¶ 10} Following a hearing,[4] a staff hearing officer ("SHO") issued an order denying relator PTD compensation because, under Ohio Adm.Code 4121-3-34(D)(1)(d), relator voluntarily abandoned the workforce. The SHO order specifically lists "closed head injury" as one of the allowed claims. (Stipulated Record at 10.) In its order, the SHO noted that the commission's first order denying PTD compensation based on relator's ability to work

---

[4] A transcript of the April 25, 2018 hearing is not included in the stipulated record. We note neither party has disputed, either in arguing for or against reconsideration to the commission or in arguing for or against mandamus in this court, the accuracy of the SHO's recitation of the testimony at the hearing provided in its April 26, 2018 order.

part-time had been upheld in the appellate courts.  The SHO order then states in pertinent part:

> The Staff Hearing Officer finds from the Injured Worker's testimony at hearing and the filed permanent total application that he last worked in late 2008 or early 2009.  The Staff Hearing Officer finds that the Injured Worker testified at the hearing that he is receiving social security disability benefits and federal disability benefits.  The Staff Hearing Officer notes that the Injured Worker testified that he did not believe that he could receive federal disability benefits if he was working.  The Staff Hearing Officer notes that the federal disability benefits arose from his employment with the post office.  The Staff Hearing Officer finds that the Injured Worker has not looked for work for a number of years; at least since 09/11/2014.  The Staff Hearing Officer finds that a failure to seek other work or pursue vocational rehabilitation after Industrial Commission adjudication that Injured Worker is capable of sustained remunerative employment can support a finding that by his own inaction, the Injured Worker has voluntarily abandoned the workforce.  *State ex rel. McKee v. Union Metal Corp. et al.* 150 Ohio St.3d 223, 2017-Ohio-5541.  The Staff Hearing Officer notes Injured Worker's counsel argues that the Injured Worker made an attempt at vocational rehabilitation.  The Staff Hearing Officer finds the injured worker met with a vocational rehabilitation case manager on 02/25/2015.  Vocational Works determined that the Injured Worker's vocational rehabilitation should be closed effective 03/24/2015 due to medical instability.  The Staff Hearing Officer notes that the Vocational Works must rely on the Injured Worker's express concern about the inability to retain information and his opinion that this may well be the biggest barrier to re-employment.  The Staff Hearing Officer notes that Ms. Burton, field case manager for Voc Works was without an accurate assessment of his cognitive function and thus, she would have no confidence he would be employable in a competitive market.  Ms. Burton opined that without increased psychological, physical and cognitive functional abilities he is not feasible for vocational rehabilitation or return to work.  The Staff Hearing Officer notes that the rehabilitation case was closed effective 03/26/2015 for the reason of no planned services to offer secondary to medical instability.  The Staff Hearing Officer finds that recommended closure was effective 03/24/2015.  The Staff Hearing Officer finds that this pursuit of vocational rehabilitation over roughly a three week period is not sufficient in establishing a meaningful effort in pursuing all reasonable avenues of

accomplishing a return to sustained remunerative employment albeit on a part-time basis. The Staff Hearing Officer finds there is the absence of evidence that the Injured Worker has worked since 09/11/2014 or that he has looked for work and has been unable to find work since that date. The Staff Hearing Officer finds based upon the evidence noted above, that the Injured Worker has voluntarily abandoned the workforce.

(Stipulated Record at 11-12.)

{¶ 11} The commission denied relator's request for reconsideration. On June 21, 2018, relator filed a complaint in mandamus with this court stating the decision of the commission is not supported by any evidence in the claim file, is contrary to law, and constitutes an abuse of discretion, and stating he has a plain and clear right to relief, and the commission has a clear duty to find he is permanently and totally disabled and to issue payment of PTD compensation.

{¶ 12} The magistrate agreed with relator. Specifically, the magistrate found "the commission abused its discretion when it determined that relator should be denied PTD compensation based on his alleged failure to put forth a good effort at vocational rehabilitation." (Mag.'s Decision at ¶ 48.) The magistrate also recommended that, rather than remand the matter to the commission to reconsider the issue, we instead order the commission to award relator PTD compensation based on the November 27, 2017 medical report of Dr. Halmi—"the best and only evidence in the record discussing relator's cognitive abilities as a result of the traumatic brain injury which he sustained as a result of the closed head injury." (Mag.'s Decision at ¶ 49.) Therefore, the magistrate recommended this court grant relator's writ and order the commission to find relator is permanently and totally disabled and eligible for PTD compensation.

## II. OBJECTIONS

{¶ 13} The commission sets forth the following objections:

1. The magistrate erred in failing to include in her findings of fact that relator testified that he could lose other benefits if he returned to work.

2. The magistrate misstated the SHO's findings and erred in not finding that the SHO decision to deny PTD compensation was supported by some evidence in the record.

## III. LEGAL ANALYSIS

{¶ 14} For clarity of analysis, we will address the commission's objections together. In its first objection, the commission contends the magistrate erred in failing to include in her findings of fact that relator testified he could lose other benefits if he returned to work, since the SHO considered this testimony in denying the application for PTD. Relatedly, in its second objection, the commission contends the magistrate misstated the SHO's findings and erred in not finding some evidence supported the SHO's decision to deny compensation. For the following reasons, we agree with the commission.

{¶ 15} First, we will consider whether the magistrate erred in not fully and/or accurately stating the findings and reasoning of the SHO. In the findings of fact of the magistrate's decision, the magistrate finds the SHO order states: "The SHO concluded relator had not put forth any sincere effort to participate in vocational rehabilitation." (Mag.'s Decision at ¶ 41.) In the conclusions of law, the magistrate then states the SHO ultimately denied the PTD compensation application based on this "finding that [relator] did not put forth a sincere effort" at vocational rehabilitation and that doing so was an abuse of discretion. (Mag.'s Decision at ¶ 48.)

{¶ 16} However, as provided above, the SHO order found relator voluntarily abandoned the workforce based on: the previous *Bonnlander* court decisions upholding the commission's determination that relator was capable of sustained remunerative employment; relator's testimony at the hearing that he last worked in late 2008 or early 2009; the absence of evidence that relator has worked or looked for work and has been unable to find work since September 11, 2014 (the date of the hearing where the commission denied his first PTD application); relator's testimony at the hearing on the second PTD compensation application that he is receiving Social Security disability benefits and federal disability benefits and that he did not believe he could receive federal disability benefits if he was working; the absence of an accurate assessment of relator's cognitive function to support the assessment of the vocational rehabilitation case manager; and the insufficiency of relator's pursuit of vocational rehabilitation over roughly a three-week period to establish a meaningful effort in pursuing all reasonable avenues of accomplishing a return to sustained remunerative employment on a part-time basis.

{¶ 17} In other words, the SHO's finding on relator's effort at vocational rehabilitation was only one consideration among many used to support the SHO's decision to deny PTD compensation. Therefore, we sustain the commission's objections to the extent they challenge the magistrate's failure to include reference to the full range of evidence relied on by the SHO. As a result, pursuant to Civ.R. 53(D)(4)(b), we modify the magistrate's eleventh finding of fact to reflect all the evidence relied on by the SHO as stated in the April 26, 2018 order, and the fact that the SHO relied on all this evidence, rather than just the vocational rehabilitation finding, in rendering the decision to deny PTD compensation.

{¶ 18} Having agreed with the commission that all the evidence relied on by the SHO should be included and considered in the decision, we must now determine whether relator met his burden to demonstrate a writ of mandamus is warranted in this case to order the commission to vacate its order denying him PTD compensation and order the commission to award him PTD compensation.

{¶ 19} In *State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, ¶ 9-11, the Supreme Court set forth the legal framework to review a request for a writ of mandamus in regard to PTD compensation as follows:

> Permanent total disability is "the inability to perform sustained remunerative employment" as a result of the allowed conditions in the claim. Ohio Adm.Code 4121-3-34(B)(1); *accord State ex rel. Nissin Brake Ohio Inc. v. Indus. Comm'n of Ohio*, 127 Ohio St.3d 385, 2010-Ohio-6135, 939 N.E.2d 1242, ¶ 12. The burden is on the claimant to establish that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a); *accord State ex rel. LTV Steel Co. v. Industrial Com. of Ohio*, 65 Ohio St.3d 22, 23, 1992-Ohio-57, 599 N.E.2d 265 (1992).
>
> A claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the workforce for reasons not related to the industrial injury. *State ex rel. Black v. Indus. Comm'n of Ohio*, 137 Ohio St. 3d 75, 2013-Ohio-4550, 997 N.E.2d 536, ¶ 14. This is a factual question for the commission to determine. *Id.* at ¶ 18. In making that determination, the commission may consider a claimant's inaction after leaving a job as evidence that the claimant voluntarily decided to no longer be actively employed. *State ex rel. Pierron v. Indus.*

*Comm'n*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 11. The commission is exclusively responsible for evaluating the weight and credibility of the evidence. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21, 31 Ohio B. 70, 508 N.E.2d 936 (1987).

To be entitled to extraordinary relief in mandamus, McKee must establish that he had a clear legal right to the relief requested and that the commission had a clear legal duty to provide it. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198, 26 Ohio B. 289, 498 N.E.2d 464 (1986). This requires McKee to demonstrate that the commission abused its discretion by entering an order not supported by some evidence in the record. *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, 846 N.E.2d 1245, ¶ 9. Thus, we must determine whether the commission's order denying permanent-total-disability compensation was supported by evidence in the record showing that McKee had voluntarily abandoned the workforce and was not eligible for benefits.

{¶ 20} Thus, a claimant is not eligible for PTD compensation if, after a hearing, an adjudicator finds the injured worker voluntarily removed himself from the workforce. Ohio Adm.Code 4121-3-34(D)(1)(d). A claimant's intent to leave the workforce may be inferred from his words, acts, and other objective facts. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, ¶ 10.

{¶ 21} Here, some evidence supported the commission's order to deny PTD compensation based on voluntary abandonment of the workforce. First, indicated above, evidence that a claimant voluntarily abandoned the workforce for reasons unrelated to the industrial or occupational injury supports the commission's decision to deny PTD compensation. R.C. 4123.58(D)(3); *McKee* at ¶ 9. In this same vein, this court has found the fact that a claimant receives Social Security disability benefits or other disability benefits to be some evidence to support the commission's finding that a claimant voluntarily abandoned the workforce. *State ex rel. Segal v. Elex, Inc.*, 10th Dist. No. 14AP-608, 2015-Ohio-5275, ¶ 16. In this case, it is undisputed that relator testified he was receiving Social Security disability benefits and federal disability benefits and that he believed he could not receive those benefits if he was working. Therefore, we find there is some evidence suggesting relator voluntarily abandoned the workforce for reasons unrelated to his allowed conditions.

{¶ 22} Second, a claimant's inaction may be considered evidence that the claimant voluntarily decided to no longer be actively employed. *McKee* at ¶ 10. Here, it is undisputed that after the commission found him capable of sustained remunerative employment in September 2014, a finding which included consideration of his closed head injury[5] and psychological difficulties, relator has not worked, and there is no record evidence he sought work.

{¶ 23} Relator did briefly seek vocational rehabilitation in 2015. However, the medical evidence in September 2014 showed relator retained the capacity to work on a part-time basis, and the commission's finding on relator's ability to work was not predicated on vocational rehabilitation. In similar circumstances, this court found a vocational rehabilitation determination to be "irrelevant" to the question of voluntary abandonment since, pursuant to Ohio Adm.Code 4121-3-34(D)(1)(d),[6] the commission's determination that a claimant voluntarily removed him or herself from the workforce required consideration of his or her medical condition "at or near the time of removal/retirement." *State ex rel. Patterson v. Indus. Comm.*, 10th Dist. No. 16AP-786, 2017-Ohio-9195, ¶ 10, 11. Moreover, the commission in this case found relator's pursuit of vocational rehabilitation over the course of "roughly a three week period" insufficient to counter other evidence of voluntary abandonment. (Stipulated Record at 12.) As the responsibility for evaluating the weight and credibility of this evidence lies exclusively with the commission, we decline to reweigh it to produce a different result. *See generally State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14.

{¶ 24} On the facts of this case, we find relator's testimony and his inaction to be, at minimum, some evidence that he voluntarily decided to no longer be actively employed. *McKee* at ¶ 8, 10; *State ex rel. Bomer v. Indus. Comm.*, 10th Dist. No. 17AP-701, 2019-Ohio-1328, ¶ 6. While relator presents evidence that he did not voluntarily abandon the workforce, under our standard of review " '[i]t is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.' " *Vonderheide* at ¶ 14, quoting *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373,

---

[5] The SHO order at issue considered the allowed condition of closed head injury as well.

[6] "If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition *at or near the time of removal/retirement.*" (Emphasis added.) Ohio Adm.Code 4121-3-34(D)(1)(d).

376 (1996).  *State ex rel. R&L Carriers Shared Servs., L.L.C. v. Indus. Comm.*, 151 Ohio St.3d 568, 2017-Ohio-5833, ¶ 14 ("The commission has exclusive authority to determine disputed facts regarding permanent total disability, including the authority to evaluate the weight and credibility of the evidence.").

{¶ 25} Because there is some evidence to support the commission's decision that relator voluntarily abandoned the workforce, the commission did not abuse its discretion when it denied relator PTD compensation.  *McKee* at ¶ 10.  Relator has not established that he had a clear legal right to the relief requested and that the commission had a clear legal duty to provide it, and, therefore, relator is not entitled to extraordinary relief in mandamus.  *Id.* at ¶ 11.  Considering all the above, we sustain the commission's objections.

## IV.  CONCLUSION

{¶ 26} Following review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we adopt the magistrate's findings of fact as modified herein, we reject the magistrate's conclusions of law and substitute them with our own, and we deny the requested writ of mandamus.

*Objections sustained*;
*writ of mandamus denied.*

BROWN and DORRIAN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Timothy Bonnlander, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-501 |
| | : | |
| Robert and Marvin Hamon et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

**Rendered on February 27, 2019**

---

*Mark B. Weisser,* for relator.

*Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 27} Relator, Timothy Bonnlander, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation on grounds that he had abandoned the workforce when he failed to make a sufficient effort at vocational rehabilitation, and ordering the commission to grant him PTD compensation.

<u>Findings of Fact</u>:

{¶ 28} 1.  Relator was severely injured in a work-related motor vehicle accident which occurred on October 13, 1992.  Medical records reviewed reveal the following:

"Mr. Tim Bonnlander is a 24-year-old, right handed Caucasian male who sustained a TBI from an MVA on 10-13-92. He was found hypotensive and unresponsive at the scene with an initial GCS of 7." GCS stands for Glasgow Coma Scale. The GCS is the most common scoring system used to describe the level of consciousness of a person following a traumatic brain injury (TBI). The GCS is scored between 3 and 15, 3 being the worst and 15 the best. A GCS below 8 is considered severe. Drs. Bouman and Lehr further elaborated, "The initial CT of the head revealed diffused edema, but no lesions. Mr. Bonnlander was paralyzed, intubated, and a right chest tube was placed. Additional injuries included right rib and scapular fractures and right lung contusion. Cervical CT indicated C2 fracture and mild C2 and C3 disc herniation. He experienced approximately 12 hours of retrograde amnesia and seven days of PTA (PTA stands for posttraumatic amnesia). His medical history is reported negative. Mr. Bonnlander was transferred to Drake Center on 11-4-92." Drs. Bouman and Lehr conducted a neuropsychological evaluation of Mr. Bonnlander on 11-16-92. Drs. Bouman and Lehr reported, "This neuropsychological screening evaluation indicates relatively well-preserved attentional abilities with moderate to severe impairments in new verbal learning. Mr. Bonnlander does, however, demonstrate good retention of the limited amount of information he is able to encode. At this time, he appears to be coping well with the changes he experienced. It is recommended that Mr. Bonnlander receive a more complete neuropsychological evaluation to further document his level of cognitive function." Drs. Bouman and Lehr also recommended that he undergo cognitive rehabilitation with Phil Jasin, M.A., Department of Psychology. I am uncertain if he ever received the recommended cognitive rehabilitation. I also reviewed an addendum to Drs. Bouman and Lehr's psychological evaluation report dated 11-12-92. Drs. Bouman and Lehr reported that Mr. Bonnlander was seen for cognitive testing on 11-9-92, 11-11-92, and 11-12-92. They concluded, "Mr. Bonnlander has shown some evidence of visual binocular dysfunction at near point and the possibility of some mild left side neglect during visual screening. It is recommended that his visual status be monitored and that he have a driver evaluation before resuming driving after discharge. Memory testing indicated significant memory problems, particularly, when the patient is overloaded with information. In addition, the patient has been unable to demonstrate an awareness of cognitive limitations. It is recommended that the patient be seen by psychology for individual counseling sessions with the

focus on memory compensation, though organization, and insight promotion."

Debjani Sinha, Ph.D., indicated that Mr. Bonnlander was in a coma for 2-3 weeks in the ICU at University Hospital. She stated that he had to have a shunt placed in his head to reduce intracranial pressure. She also reported that he required a tracheotomy and feeding tube. She explained that he reportedly had to relearn many basic skills including how to talk, walk, eat, and engage in coordinated sensory-motor activities. She stated that he did not use his right arm for a long time.

{¶ 29} 2. Relator's workers' compensation claim has been allowed for the following conditions:

Closed head injury; fracture right shoulder; cervical fracture C-6: right pulmonary contusion; T12-L1 compression fracture; bursitis right shoulder; torn glenoid labrum; right shoulder impingement syndrome; right shoulder acromioclavicular joint arthrosis; lumbosacral spondylosis; thoracic spondylosis; lumbar degenerative disc disease L4-L5, L3-L4, L5-S1; thoracic degenerative disc disease T11-T12; depressive disorder.

{¶ 30} 3. Following the injury, relator received various periods of temporary total disability ("TTD") compensation. Eventually, relator returned to work as a mail carrier for the United States Post Office from 2000 to 2007 where he worked approximately 58 hours each week. When he was no longer able to perform that work physically, he continued to work in maintenance for the United States Post Office until 2009.

{¶ 31} 4. Thereafter, relator received TTD compensation through November 2013.

{¶ 32} 5. Relator filed his first application for PTD compensation on February 28, 2014. The commission relied on the medical report of Dr. Brannan who found that, from an orthopedic standpoint, relator had reached maximum medical improvement ("MMI"), and that relator could engage in sedentary work activity provided he avoid excessive overhead use of his right arm as well as excessive lifting, bending, and twisting. The commission also relied on the medical report of Dr. Sinha who examined relator for the allowed psychological condition. Although the report of Dr. Sinha is not in the stipulation of evidence, the commission summarized that report as follows:

The Injured Worker was examined at the request of the Industrial Commission by Dr. Sinha on 05/13/2014 with regard to the allowed psychological condition in the claim. Dr. Sinha indicated that the Injured Worker continues to have ongoing memory issues and that his most significant difficulty is with recent memory. She noted that the Injured Worker reported difficulty focusing on task and that his verbal fluency was impaired as well. She further noted that the Injured Worker's sequencing abilities were impaired.

With regard to activities of daily living, Dr. Sinha concluded that the Injured Worker had a mild impairment. She noted that the Injured Worker is able to attend activities related to his children's school and sports activities including coaching his daughter's softball team.

With regard to social functioning, Dr. Sinha concluded that the Injured Worker was moderately impaired as the Injured Worker reports minimal contact with individuals outside of his family and he tries not to engage much with others.

With regard to concentration, persistence and pace, Dr. Sinha concluded that the Injured Worker was moderately impaired. She noted the Injured Worker's ability to concentrate is varied. She noted that the Injured Worker's memory appears to be problematic but that the Injured Worker functions relatively well in attending to self-assigned tasks, many of which require persistence. She noted that the Injured Worker does well with routine.

With regard to adaptation, Dr. Sinha concluded that the Injured Worker has a mild impairment. She stated that the Injured Worker has adapted to changes in his functioning since the industrial injury and that his cognitive weaknesses have improve[d] considerably since the industrial injury. She further noted that the Injured Worker has demonstrated initiative and motivation as demonstrated by his recent activities of daily living as well as assuming responsibility for coaching his children's sports teams.

Dr. Sinha concluded that the Injured Worker['s] psychological condition has reached maximum medical improvement and results in a 23% whole person impairment rating. She concluded that based upon the allowed psychological condition in the claim the Injured Worker is capable of work. She stated that the Injured Worker's memory and attention abilities would be the most significant limitation in work

related activities. She stated that job tasks that require new learning and marked attention to detail would not be recommended based upon his memory problems. She concluded that the Injured Worker can at a minimum work part-time, up to four hours a day with generous breaks built-in. She noted that this employment would ideally involve[] routine jobs and would also involve minimal new learning on a[n] ongoing basis.

{¶ 33} Thereafter, the commission noted that relator was 46 years old, had a 10th grade education and a GED, was able to read, write, and engage in basic mathematical computation without difficulty.  The commission concluded that relator's age and education were positive factors toward his ability to become re-employed.  With regard to his work history, the commission noted he had been involved as a maintenance worker and a mail carrier for the United States Postal Service as well as a construction and factory worker.  The commission determined this past work experience was semi-skilled and involved supervisory work, and was also a positive factor toward his ability to become re-employed.  Finding that he could perform sedentary work which involves part-time work, up to four hours a day, involving routine employment with minimal new learning, relator was not permanently and totally disabled.  Thereafter, as a second reason, the commission also denied his application for PTD compensation on the grounds that relator had not participated in vocational rehabilitation.

{¶ 34} 6.   This court affirmed the decision of the commission in *State ex rel. Bonnlander v. Hamon,* 10th Dist. No. 14AP-855, 2015-Ohio-4038.  In affirming this court's decision, the Supreme Court of Ohio concluded there was no statutory or administrative authority for the proposition that four or more hours of work a day constituted the minimum standard for sustained remunerative employment.  The court stated there was no bright-line test to determine whether a worker could return to sustained remunerative employment and indicated the commission makes those decisions on a case-by-case basis. *State ex rel. Bonnlander v. Hamon,* 150 Ohio St.3d 567, 2017-Ohio-4003.

{¶ 35} 7.   Thereafter, relator filed a motion for vocational rehabilitation which the Ohio Bureau of Workers' Compensation ("BWC") initially denied finding that relator was not eligible.   However, following a hearing, relator was found eligible for vocational rehabilitation.

{¶ 36} 8.  Relator's file was referred for vocational rehabilitation services.  Relator shared that his biggest concern about any new employment would be his memory issues. Attempts to contact relator's treating psychologist's office were unsuccessful.  The evaluators reviewed Dr. Sinha's report noting that she indicated relator could perform part-time work with accommodations for variable concentration, that routine jobs would be more appropriate with minimal new learning with on-going fashion, and with multiple breaks.  The evaluators recommended that relator be evaluated to determine if reconditioning would be helpful to improve his physical abilities; however, respondent, Hamon Home Improvements' managed care organization ("MCO") denied that request noting the claim was too old.  In recommending closure, Ms. Burton stated:

> Without the benefit of reconditioning, or a Neuro-Psychological evaluation, and in just relying on the [Injured Worker's] presentation, pain levels, and applicable physical and psychological restrictions, this [vocational rehabilitation case manager] has no confidence he would be able to actively participate in vocational rehab or employable in a competitive labor market. It is therefore the [vocational rehabilitation case manager]'s opinion, that without increased psychological, physical, and cognitive functional abilities, he is not feasible for vocational rehabilitation or return to work. Closure was recommended, effective 3/26/15, due to medical instability.

{¶ 37} 9.  Relator filed his second application for PTD compensation, which is currently before this court, on October 12, 2017.  Stephen W. Halmi, Psy.D., examined relator.  At the outset of his November 27, 2017 report, Dr. Halmi identified the allowed conditions in relator's claim, and specifically listed the following tests which he administered during the examination:

> I interviewed Mr. Bonnlander. Mr. Bonnlander completed a psychosocial history form, psychological symptom checklist, Neurobehavioral Symptom Inventory (NSI), the Minnesota Multiphasic Personality Inventory-2 Restructured Form (MMPI-2 RF), Beck Depression Inventory – II (BDI-II), and Beck Anxiety Inventory (BAI). I administered a mental status examination, the Test of Memory Malingering (TOMM), Rey 15 Item Test (FIT), Trail Making Test, Word Reading substest of the Wide Range Achievement Test-4 (WRAT-4), and Repeatable Battery of Assessment of Neuropsychological Status (RBANS).

{¶ 38} Thereafter, Dr. Halmi discussed the medical records which he reviewed, all of which noted relator's difficulties with his memory. Without going into detail concerning the results of all the testing administered to relator, the magistrate specifically notes that Dr. Halmi concluded the results were valid, that relator put forth reasonable effort, and was not malingering. The results suggested extremely low cognitive functioning, very poor capacity to remember and manipulate both visually and orally presented information in short-term memory storage, very poor expressive language skills, very poor rote verbal memory functioning. One test in particular is considered one of the best general indicators of cerebral dysfunction. Relator's performance on that test was in the borderline range indicating an executive functioning deficit. Ultimately, Dr. Halmi concluded that relator's allowed psychological condition of depressive disorder had reached MMI and resulted in moderate impairment in his overall functioning. In concluding that relator was not able to perform sustained remunerative employment, Dr. Halmi stated:

> Based on my interview, review of records (including previous test results), and examination of Mr. Bonnlander, and considering only the conditions allowed in his L7512-27 claim, it is my opinion, within a reasonable degree of psychological certainty, that Mr. Bonnlander is incapable of performing remunerative work. Mr. Bonnlander would have difficulty in the areas of social interaction, adaptation, learning new skills, and productivity. For example, I opine that this ability to take directions from supervisors would likely be variable. At times, I opine that he would react to constructive criticism from supervisors with defensiveness and hostility. He would likely respond similarly to coworkers and the general public. Overall, I opine that his behavior in the workplace would be unpredictable. I opine that his ability to demonstrate appropriate judgment, awareness of sensitivities, and display social maturity in the workplace is significantly impaired. It is my opinion that he would not work well in a team environment due to his emotional lability. Furthermore, he would need constant supervision because of his forgetfulness. I opine that he does not have the ability to make complex decisions because of his cognitive disabilities. His low energy level and fatigue would reduce his productivity and initiative. Based on objective test results, I opine that he does not have the ability to sustain concentration for task completion at a reasonable pace.

{¶ 39} Dr. Halmi's report can be found at pages 21 through 44.

{¶ 40} 10. In a tentative order, the commission granted relator's application for PTD compensation finding that the physical and psychological conditions are of such a severe nature that they preclude relator from returning to his former position of employment or engaging in any type of sustained remunerative work activity.

{¶ 41} 11. The BWC requested a hearing which was held before a staff hearing officer ("SHO") on April 26, 2018. The BWC argued relator had voluntarily abandoned the workforce in 2014 following the denial of his first application for PTD compensation. The SHO concluded relator had not put forth any sincere effort to participate in vocational rehabilitation and, as a result, denied his application for PTD compensation.

{¶ 42} 12. Relator's appeal and request for reconsideration were denied.

{¶ 43} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 44} For the reasons that follow, it is this magistrate's decision that relator has demonstrated the commission abused its discretion when it denied his application for PTD compensation, and this court should issue a writ of mandamus ordering the commission to reinstate the tentative order and award PTD compensation to relator.

{¶ 45} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence

are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 47} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment.  *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994).  Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors.  *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).  Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability.  *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994).  The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision.  *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 48} While the magistrate is fully cognizant that an injured worker is responsible for pursuing attempts at vocational rehabilitation and the commission can hold a claimant's failure to do so against them and deny an application for PTD compensation, in the present case, the commission ultimately denied relator's application for PTD compensation based on a finding that he did not put forth a sincere effort.  The closure report does not support that statement.  Instead, Ms. Burton clearly articulated the employer's MCO refused to allow the vocational rehabilitation specialist to have relator evaluated for reconditioning and that without such an evaluation or a neuro-psychological evaluation, the evaluators had no confidence that relator would be able to actively participate in vocational rehabilitation or that he would be employable in a competitive labor market.  Without increased psychological, physical, and cognitive functional abilities, the rehabilitators found that relator was not feasible for vocational rehabilitation or a return to work and recommended closure of his file.  The magistrate specifically finds the commission abused its discretion when it determined that relator should be denied PTD compensation based on his alleged failure to put forth a good effort at vocational rehabilitation.

{¶ 49} As a general rule, the magistrate would recommend the court remand the matter to the commission to reconsider the issue; however, in this particular case, the magistrate recommends instead that the court order the commission to award relator PTD compensation.  The November 27, 2017 medical report of Dr. Halmi is the best and only

evidence in the record discussing relator's cognitive abilities as a result of the traumatic brain injury which he sustained as a result of the closed head injury, which is an allowed condition in his claim. Dr. Halmi performed extensive neurological testing and concluded that relator was not capable of returning to any sustained remunerative employment as a result of his impaired cognitive functioning. Dr. Halmi's detailed report is in line with all the other psychological reports which considered relator's memory issues solely from a psychological perspective. Given that Dr. Halmi is a commission specialist and given that his is the only medical report in the record which actually does what the vocational rehabilitation evaluator stated was necessary (a neuro-psychological report), the magistrate finds that, based on that report alone, relator is permanently and totally disabled, and it would be a waste of time to remand the matter to the commission for additional hearing.

{¶ 50} Based on the foregoing, it is this magistrate's decision that this court should grant relator's request for a writ of mandamus, and order the commission to find that, pursuant to the November 27, 2017 report of Dr. Halmi, relator is permanently and totally disabled and eligible for that compensation.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).